UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 3:15-CR-34 |
| v. | ) | |
| | ) | JUDGE VARLAN |
| DAVID DAVIS | ) | |

## **PLEA AGREEMENT**

The United States of America, by the United States Attorney for the Eastern District of Tennessee, and the defendant, DAVID DAVIS, and the defendant's attorney, James H. Varner, Jr., have agreed upon the following:

1. The defendant will plead guilty to the following count(s) in the indictment:

   a) Count One, which charges conspiracy to distribute and possess with intent to distribute a mixture and substance containing a detectable amount of oxycodone, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846, 841(a)(1) and 841(b)(1)(C).

   The punishment for this offense is as follows: (1) a term of imprisonment of not more than twenty years; (2) a fine of up to $1,000,000; (3) a term of supervised release of at least three years; (4) criminal forfeiture; and (5) a mandatory $100 special assessment.

   b) Count Two, which charges conspiracy to commit money laundering, in violation of Title 18, United States Code, Section 1956(h).

   The punishment for this offense is as follows: (1) a term of imprisonment of up to twenty years; (2) a fine of up to $500,000 or twice the value of the property involved in the transaction, whichever is greater; (3) a term of supervised release of up to three years; (4) criminal forfeiture; and (5) a mandatory $100 special assessment.

2. The defendant has read the indictment, discussed the charges and possible defenses with defense counsel, and understands the crime(s) charged. Specifically, the elements of the offense(s) are as follows:

Count One: (1) The defendant agreed with others to violate the federal drug laws; (2) the defendant joined the conspiracy knowingly and intentionally; (3) the defendant participated in the conspiracy; and (4) the overall scope of the conspiracy involved a mixture and substance containing a detectable amount of oxycodone.

Count Two: (1) The defendant agreed with at least one other person to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce; (2) the financial transactions involved the proceeds of an unlawful activity, that is, drug trafficking; (3) the defendant knew that the proceeds derived from some form of unlawful activity; (4) the defendant conducted or attempted to conduct such financial transactions with the intent to promote the carrying on of, and to conceal and disguise the nature of, the location, source, ownership and control of the specified unlawful activity; and (5) the defendant entered into the conspiracy knowingly and voluntarily.

3. In support of the defendant's guilty plea, the defendant agrees and stipulates to the following facts, which satisfy the offense elements. These are the facts submitted for purposes of the defendant's guilty plea. They do not necessarily constitute all of the facts in the case. Other facts may be relevant to sentencing. Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

Between approximately March 2013 and March 2015, the defendant, DAVID DAVIS, was sponsored as a patient at two or more pain clinics in Knoxville, Tennessee—East Knoxville Healthcare Systems (EKHCS) and Knoxville Pain Care (KPC)—for the purpose of obtaining quantities of prescription oxycodone for diversion to the illegal drug market. DAVIS was sponsored

2

or assisted by an unindicted co-conspirator. The unindicted co-conspirator arranged and paid for DAVIS's monthly clinic visits and prescription costs—approximately $1,000 per month—in exchange for a portion of oxycodone and other narcotic pain pills prescribed to DAVIS by the clinics. The unindicted co-conspirator communicated via telephone with Stephanie PUCKETT and/or Shannon HILL to work out the logistics of getting her sponsored patients through their clinic appointments. PUCKETT and HILL, defendants in Case Number 3:15-CR-42, are former employees of EKHCS who left EKHCS to help start up KPC as a competing clinic. The unindicted co-conspirator paid bribes to PUCKETT and/or HILL for providing assistance to her patients, including the falsification of drug screens. The unindicted co-conspirator and the patients he/she sponsored, including DAVIS, also laundered drug money through local banks and the clinics. Because Tennessee state law requires pain clinics to accept payment for services in a form that ostensibly assures that the patient is the person actually paying the fees, the unindicted co-conspirator funded bank accounts in the patients' names so they could pay for their clinic visits with bank cards issued in their names. The unindicted co-conspirator sold his/her share of the pills on the streets for profit. The clinics' medical personnel prescribed unreasonably high levels of oxycodone to DAVIS without a legitimate medical purpose and in violation of federal law. In total, providers at EKHCS, its sister clinics, and KPC prescribed approximately 12 million opioid pills, or approximately 360,000,000 milligrams of opioid narcotics, to thousands of patients during the conspiracy. The sponsor group headed by the unindicted co-conspirator obtained at least 100,000 milligrams of oxycodone and other prescription opioids from providers at EKHCS and KPC. The unindicted co-conspirator diverted the majority of those narcotics to the illegal drug market. As a sponsored patient during the period of his participation in the conspiracy, DAVIS was prescribed at least 47,000 milligrams of oxycodone by medical providers EKHCS and KPC. As noted, a portion

of that amount was diverted to the unindicted co-conspirator and, eventually, to street-level users. The amount of oxycodone prescribed directly to DAVIS equates to a base offense level of 24 based on drug quantities. Thus, DAVIS agrees that a base offense level of 24 should apply in this case. DAVIS also agrees that two additional levels should be added for money laundering, for a total base offense level of 26. It is believed that this base offense level fairly reflects the United States' proof against DAVIS at the time this agreement was executed.

4. The defendant is pleading guilty because the defendant is in fact guilty. The defendant understands that, by pleading guilty, the defendant is giving up several rights, including:

    a) the right to plead not guilty;

    b) the right to a speedy and public trial by jury;

    c) the right to assistance of counsel at trial;

    d) the right to be presumed innocent and to have the burden of proof placed on the United States to prove the defendant guilty beyond a reasonable doubt;

    e) the right to confront and cross-examine witnesses against the defendant;

    f) the right to testify on one's own behalf, to present evidence in opposition to the charges, and to compel the attendance of witnesses; and

    g) the right not to testify and to have that choice not used against the defendant.

5. The parties agree that the appropriate disposition of this case would be the following as to each count:

    a) The Court may impose any lawful term(s) of imprisonment, any lawful fine(s), and any lawful term(s) of supervised release up to the statutory maximum(s);

    b) The Court will impose special assessment fees as required by law; and

4

      c)     The Court may order forfeiture as applicable and restitution as appropriate. No promises have been made by any representative of the United States to the defendant as to what the sentence will be in this case. Any estimates or predictions made to the defendant by defense counsel or any other person regarding any potential sentence in this case are not binding on the Court, and may not be used as a basis to rescind this plea agreement or withdraw the defendant's guilty plea(s). The defendant understands that the sentence in this case will be determined by the Court after it receives the presentence investigation report from the United States Probation Office and any information presented by the parties. The defendant acknowledges that the sentencing determination will be based upon the entire scope of the defendant's criminal conduct, the defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.

6.     Given the defendant's agreement to plead guilty, the United States will not oppose a two-level reduction for acceptance of responsibility under the provisions of Section 3E1.1(a) of the Sentencing Guidelines. Further, if the defendant's offense level is 16 or greater, and the defendant is awarded the two-level reduction pursuant to Section 3E1.1(a), the United States agrees to move, at or before the time of sentencing, the Court to decrease the offense level by one additional level pursuant to Section 3E1.1(b) of the Sentencing Guidelines. Should the defendant engage in any conduct or make any statements that are inconsistent with accepting responsibility for the defendant's offense(s), including violations of conditions of release or the commission of any additional offense(s) prior to sentencing, the United States will be free to decline to make such motion, to withdraw that motion if already made, and to recommend to the Court that the defendant not receive any reduction for acceptance of responsibility under Section 3E1.1 of the Sentencing Guidelines.

7. The defendant agrees to pay the special assessment in this case prior to sentencing.

8. Financial Obligations. The defendant agrees to pay all fines and restitution imposed by the Court to the Clerk of Court. The defendant also agrees that the full fine and/or restitution amount(s) shall be considered due and payable immediately. If the defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any time, the defendant agrees that the Bureau of Prisons and the Probation Office will have the authority to establish payment schedules to ensure payment of the fine and/or restitution. The defendant further agrees to cooperate fully in efforts to collect any financial obligation imposed by the Court by set-off of federal payments, execution on non-exempt property, and any other means the United States deems appropriate. The defendant and counsel also agree that the defendant may be contacted post-judgment regarding the collection of any financial obligation imposed by the Court without notifying the defendant's counsel and outside the presence of the defendant's counsel. In order to facilitate the collection of financial obligations to be imposed with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party. In furtherance of this agreement, the defendant additionally agrees to the following specific terms and conditions:

    a) If so requested by the United States, the defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs. The defendant promises that such financial statement and disclosures will be complete, accurate, and truthful.

b) The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

c) If so requested by the United States, the defendant will promptly execute authorizations on forms provided by the U.S. Attorney's office to permit the U.S. Attorney's Office to obtain financial and tax records of the defendant.

9. The defendant acknowledges that the principal benefits to the United States of a plea agreement include the conservation of limited government resources and bringing a certain end to the case. Accordingly, in consideration of the concessions made by the United States in this agreement and as a further demonstration of the defendant's acceptance of responsibility for the offense(s) committed, the defendant voluntarily, knowingly, and intentionally agrees to the following:

a) The defendant will not file a motion for downward departure or variance or a direct appeal of the defendant's conviction(s) or sentence with one exception: The defendant retains the right to appeal a sentence imposed above the sentencing guideline range determined by the Court or above any mandatory minimum sentence deemed applicable by the Court, whichever is greater. The defendant also waives the right to appeal the Court's determination as to whether the defendant's sentence will be consecutive or partially concurrent to any other sentence.

b) The defendant will not file any motions or pleadings pursuant to 28 U.S.C. § 2255 or otherwise collaterally attack the defendant's conviction(s) or sentence, with two exceptions: The defendant retains the right to file a § 2255 motion as to (i) prosecutorial misconduct and (ii) ineffective assistance of counsel.

c) The defendant will not, whether directly or by a representative, request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. Section 552, or the Privacy Act of 1974, 5 U.S.C. Section 552a.

10. This plea agreement becomes effective once it is signed by the parties and is not contingent on the defendant's entry of a guilty plea. If the United States violates the terms of this plea agreement, the defendant will have the right to withdraw from this agreement. If the defendant violates the terms of this plea agreement in any way (including but not limited to failing to enter guilty plea(s) as agreed herein, moving to withdraw guilty plea(s) after entry, or by violating any court order or any local, state or federal law pending the resolution of this case), then the United States will have the right to void any or all parts of the agreement and may also enforce whatever parts of the agreement it chooses. In addition, the United States may prosecute the defendant for any and all federal crimes that the defendant committed related to this case, including any charges that were dismissed and any other charges which the United States agreed not to pursue. The defendant expressly waives any statute of limitations defense and any constitutional or speedy trial or double jeopardy defense to such a prosecution. The defendant also understands that a violation of this plea agreement by the defendant does not entitle the defendant to withdraw the defendant's guilty plea(s) in this case.

11. The United States will file a supplement in this case, as required in every case by the Local Rules of the United States District Court for the Eastern District of Tennessee, even though there may or may not be any additional terms. If additional terms are included in the supplement, they are hereby fully incorporated herein.

8

12. This plea agreement and supplement constitute the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above-referenced charge(s), and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States. The parties understand and agree that the terms of this plea agreement can be modified only in writing signed by all of the parties and that any and all other promises, representations, and statements whether made before, contemporaneous with, or after this agreement, are null and void.

WILLIAM C. KILLIAN
UNITED STATES ATTORNEY

12-1-15
Date

By: _____
TRACY L. STONE
Assistant United States Attorney

11-23-15
Date

_____
DAVID DAVIS
Defendant

11-25-15
Date

_____
JAMES H. VARNER, JR.
Attorney for the Defendant

9